*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

OLGA H. VILLARS,                       )
                                       )   Supreme Court No. S-14416
                    Appellant,         )
                                       )   Superior Court No. 4FA-07-02606 CI
        v.                             )
                                       )   O P I N I O N
RICHARD J. VILLARS,                    )
                                       )   No. 6797 - July 19, 2013
                    Appellee.          )
                                       )
_____)

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Olga H. Villars, pro se, Solana Beach, California, Appellant. Richard J. Villars, pro se, Marrero, Louisiana, Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

MAASSEN, Justice.
CARPENETI, Justice, concurring.

## I.      INTRODUCTION

Olga Villars sued her former husband, Richard Villars, for his failure to pay spousal support during the year 2010. Following a trial at which both parties appeared telephonically and pro se, the trial court ruled that the amount Richard owed Olga had to be reduced to account for (1) the smaller size of her household while her daughter was

living with Richard, (2) the lower federal poverty level in California, where Olga had moved, (3) the substantial contributions for support Olga received from her second husband, and (4) Olga's earned income. On appeal, Olga challenges these rulings and certain aspects of the trial procedure. Because we find that the trial court clearly erred in its calculation of the amount of support contributed by Olga's second husband, we remand for further consideration of this issue while affirming on all others.

## II.   BACKGROUND

### A.   Facts

Richard and Olga were married in December 2004 in Kiev, Ukraine. Olga moved to Alaska in July 2005 with her minor daughter, Linda, to be with Richard. As Olga's immigration sponsor, Richard filed an INS Form I-864 affidavit of support, in which he agreed to maintain Olga and Linda "at an income that is at least 125 percent of the Federal poverty guidelines."[1]

Richard and Olga divorced on January 12, 2009. Their divorce decree incorporated Richard's support obligations under his I-864 affidavit and calculated monthly payments based on the federal poverty level for a two-person household in Alaska.

On February 22, 2009, Olga and Linda moved to California. There Olga married George Nasif on October 18, 2009. Olga's daughter Linda moved to Louisiana to live with Richard from December 2009 until June 14, 2010, under a temporary guardianship agreement.

---

[1]    An INS Form I-864 affidavit is required of certain immigration sponsors by 8 U.S.C. §§ 1182(a)(4)(C), 1183(a) (2012). *See Barnett v. Barnett*, 238 P.3d 594, 597-98 (Alaska 2010).

Olga's home life was unsettled during 2010, the only year at issue here. She and George maintained separate residences for much of the year; at one point George secured a restraining order against her. Olga was evicted from her apartment in April and moved into a motel, where she lived for several months until moving into another apartment with George and Linda. Olga's marriage to George was annulled in November 2010.

Richard did not make any support payments to Olga for the first eleven months of 2010. Olga filed a motion in Alaska to enforce the divorce decree, and Richard made payments for December 2010 and January 2011 pursuant to a temporary support order. His obligations for the first eleven months of 2010 were resolved at trial.

**B.    Proceedings**

Trial was held in superior court in Fairbanks in February 2011; both parties attended telephonically. After hearing from Richard, Olga, and George, the court made written findings of fact and conclusions of law. The court first ruled that Richard's 2010 support payments should be determined by the federal poverty level in California, not Alaska. The court ruled further that the payments would be determined by the federal poverty level for a single-person household, not a two-person household, for the months Linda was living with Richard. Finally, the court ruled that Richard's support obligation would be offset by the amount of support that George provided to Olga and Linda during 2010. With some inconsistencies noted below, George testified at trial that his 2010 income was approximately $24,000, and that he spent this entire amount to support Olga, Linda, and himself. The trial court credited this testimony and calculated an offset assuming that all of George's income went to pay all of the family's living expenses. Accordingly, the trial court divided George's income evenly between him and Olga for

the months Linda was away and among the three of them for the months she was there, for a total of $14,202.80 in support from George for Olga and Linda.

After a few other minor adjustments — $175 in income that Olga made in a few days of work and $275.90 "at minimum" in qualifying support that Richard paid toward the end of the year — the trial court found that Richard owed no further support for 2010. Also, although finding that Olga had satisfied any duty to mitigate that may have existed by applying unsuccessfully for a number of jobs while living in California, the court held that she had a responsibility to "continue seeking employment in earnest" or risk losing her "right to payments from Mr. Villars."

After the entry of judgment, Olga filed a motion to alter or amend it under Civil Rule 59, basing her request on financial records that she had not produced at trial. The trial court denied the motion.

On appeal, Olga raises many objections to the trial court's findings and procedure. As to its findings, Olga challenges the trial court's decision to account for California's lower federal poverty rate and for Linda's absence from the household for part of the year when calculating Richard's support obligations. She challenges the trial court's use of George's support to offset Richard's support obligation. She also contests the trial court's finding as to the amount of support that George provided. Olga also argues that the income she earned in 2010 should not be used to offset Richard's obligations.

Olga contests the fairness of the trial on two grounds. First, she argues that the trial court did not provide her with an interpreter and that she was not able to understand or be understood by the court. Second, she argues that her opportunity to participate in the trial was prejudiced by her lack of a reliable telephone connection.

Finally, Olga argues that the court erred by denying two of her motions: first, her Civil Rule 59 motion to alter or amend the judgment based on late-filed evidence, and second, her motion to strike the trial testimony of George Nasif.

## III.   STANDARD OF REVIEW

We review the trial court's findings of fact for clear error and its conclusions of law de novo.[2] We will find clear error if "after review of the entire record, we are left with a definite and firm conviction a mistake occurred."[3] Richard's obligations under the divorce decree and the INS Form I-864 affidavit are both questions of contract interpretation and are thus questions of law that we review de novo.[4] Interpreting INS Form I-864 requires the interpretation of federal statutes, and statutory interpretation is also a question of law that we review using our independent judgment.[5] The amount of income imputed to Olga to offset Richard's support obligations is a question of fact that we review for clear error.[6] The denial of Olga's motion to alter or

[2]   *Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 535 (Alaska 2011) (citing *In re Protective Proceedings of Q.A.*, 193 P.3d 743, 748 (Alaska 2008); *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 654 (Alaska 2005)).

[3]   *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)) (internal quotation marks omitted).

[4]   *Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 324 (Alaska 2011).

[5]   *Barnett*, 238 P.3d at 597 (citing *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)).

[6]   *Lacher v. Lacher*, 993 P.2d 413, 423 n.34 (Alaska 1999) (citing *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

amend a judgment is reviewed for an abuse of discretion,[7] as are the trial court's decisions regarding the need for an interpreter and telephonic participation.[8]

## IV. DISCUSSION

### A. The Trial Court Correctly Adjusted Richard's Support Obligations To Account For Olga's Move To California, Linda's Temporary Absence From The Household, And Olga's Earnings.

The findings of fact and conclusions of law that accompanied Richard and Olga's 2009 divorce decree, and that were made a part of it by reference, incorporated Richard's support obligations under the INS Form I-864 affidavit and stipulated that this obligation was governed by federal law. Under 8 U.S.C. § 1183a(a)(1)(A), Richard must maintain Olga and Linda "at an annual income that is not less than 125 percent of the Federal poverty line." We have interpreted § 1183a to mean that "a sponsor is required to pay only the difference between the sponsored non-citizen's income and the 125% of poverty threshold."[9] The "Federal poverty line" in § 1183a is defined as "the official

_____

[7]    *Nelson v. Jones*, 781 P.2d 964, 968 (Alaska 1989) ("Denial of relief under Civil Rule 59 or Rule 60 will be overturned on appeal only if the trial court has abused its discretion." (citing *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980); *Nat'l Bank of Alaska v. McHugh*, 416 P.2d 239, 244 (Alaska 1966))).

[8]    *See Vui Gui Tsen v. State*, 176 P.3d 1, 7 (Alaska App. 2008) (observing that trial court has "broad discretion as a matter of necessity" in determining what interpretive services are required); *Carr v. Carr*, 152 P.3d 450, 458 (Alaska 2007) ("We review a trial court's decisions regarding a party's telephonic appearance for abuse of discretion." (citing *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811, 817 (Alaska 2003))).

[9]    *Barnett*, 238 P.3d at 598-99 & n.13.

poverty line . . . that is applicable to a family of the size involved."[10] Accordingly, federal courts have held that a sponsor's support obligations must be adjusted downward when a family member leaves the household.[11] The trial court was therefore correct to reduce Richard's support obligations to account for the time that Linda was living with him instead of with Olga.

The trial court was also correct to adjust Richard's support obligations to account for Olga's move to California. The purpose of § 1183a is to provide a minimum level of support so that the sponsored immigrant does not become a public charge.[12] Failing to take into account changes of location would frustrate this statutory purpose; it would provide either a windfall or insufficient support to an immigrant who moved to a state with a different cost of living. The "official poverty line . . . applicable to" the sponsored family, for purposes of § 1183a(h), is the one in effect where the family is physically residing, and where it is paying for the goods and services necessary to daily life.

Olga argues that the divorce decree requires Richard's support obligation to be calculated with reference to the federal poverty line for a two-person household in Alaska, regardless of whether his I-864 affidavit would require it. She is incorrect. The decree incorporates the affidavit's duty of support but holds that the duty "is governed by Federal law" and that Richard's support obligation "shall be adjusted to match" any

---

[10] 8 U.S.C. § 1183a(h).

[11] *See Nasir v. Shah*, No. 2:10-CV-01003, 2012 WL 4342986, at *3-4 (S.D. Ohio Sept. 21, 2012)*; Stump v. Stump*, No. 1:04-CV-253-TS, 2005 WL 2757329, at *6 (N.D. Ind. Oct. 25, 2005).

[12] *See Wenfang Liu v. Mund*, 686 F.3d 418, 422-23 (7th Cir. 2012).

changes in the federal poverty guidelines. Where federal law would require an adjustment in Richard's support obligation, the divorce decree does as well.

Olga is also incorrect in arguing that Richard's support obligations should not be offset by her 2010 earnings. Olga's argument directly contradicts our holding in *Barnett* in which we adjusted a sponsor's support obligations by the sponsored immigrant's earned income.[13]

**B.      The Trial Court Clearly Erred In Its Calculation Of George's Contributions Of Support To Olga And Linda.**

It was Richard's burden at trial to prove the existence and amount of any offsets to his support obligation.[14] He presented his own testimony and that of George, Olga's second husband. George testified that he "provided food and shelter and transportation during the last year, 2010," to Olga and Linda and that the dollar amount of this support was "about 24,000." He testified that this included the costs of food, utilities, maintenance and fuel for Olga's car (which in 2010 was transferred into his name), and about six months of hotel bills while he and Olga lived apart. This testimony was complicated when he later testified that the figure of $24,000 represented his total income for 2010.

---

[13]      238 P.3d at 598-99 & n.13.

[14]      *See Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1025-26 (N.D. Cal. 2008) (finding that because sponsor did not submit evidence that any of ex-wife's student loans were forgiven or subsidized by her creditors, the loans did not count as income for offset purposes); *Cheshire v. Cheshire*, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *6 n.11 (M.D. Fla. May 4, 2006) (holding that because value of food stamps could not be ascertained, their value could not be deducted from support obligations of § 1183a immigration sponsor).

The trial court accepted that George spent $24,000 "on expenses to support himself, Ms. Villars, and her daughter." To determine how much of this George contributed to Olga and Linda, the court first determined that Olga lived in a two-person household (while Linda was living with Richard) for the first 164 days of 2010, or 44.93% of the year; and in a three-person household (after Linda returned home) for the remaining 201 days, or 55.07% of the year. The court applied these percentages to George's $24,000 in earnings and arrived at $10,783.20 in total household expenditures for the first part of the year and $13,216.80 for the remainder of the year. The court then divided the total expenditures for each period by the number of people in the household during that period, concluding that George provided $5,391.60 in support to Olga during the first 164 days of the year and $8,811.20 in support to Olga and Linda during the latter 201 days of the year, for a total of $14,202.80 in support.

The trial court, correctly applying the legal principles discussed above regarding the federal poverty guidelines and appropriate household size, determined that Richard's total support obligation for 2010 was $16,112.03. Subtracting Olga's minimal earnings for the year, the payment that Richard made for December 2010 pursuant to the temporary support order, and the amount of George's contributions, the court determined that Richard's remaining obligation was $275.90, and that he had paid that much, "at minimum," in qualifying support between June and December 2010. The trial court concluded, therefore, that Richard's remaining support obligation for 2010 was zero.

We believe that the court clearly erred in its analysis. George testified, in apparent contradiction, that (1) he contributed $24,000 to the support of Olga and Linda during 2010, and (2) that his entire earnings for 2010 were $24,000, of which some went to his own support. If George contributed $24,000 to the support of Olga and Linda,

then Richard's support obligation was more than completely offset, and any error in the court's calculation of a smaller amount of support from George would necessarily be harmless. But the trial court instead interpreted George's testimony to mean that he "spent $24,000 on expenses to support himself, Ms. Villars, and her daughter." If George's entire earnings and expenditures for 2010 were $24,000, then the court's fractional calculations — attributing half of that amount to Olga while Linda lived with Richard, and two-thirds of it to Olga and Linda once Linda had returned to live with Olga — failed to account for the substantial evidence that George's support was sporadic and variable due to the significant disruptions in their living arrangements during the year. These features required the trial court to make a more accurate approximation of George's actual contributions.

George testified that he and Olga lived apart for most of 2010 and paid separate housing expenses for much of the time. At the start of the year Olga was living at Quail Point Apartments; George lived there too for a time, but at some point (whether in 2009 or early 2010 is unclear from his testimony) he moved out and sought a restraining order against her. He moved into an apartment on his own and paid rent there while Olga remained at Quail Point. He testified that he could not recall whether he ever paid any rent at Quail Point. He testified that Richard, however, did pay "some of the rent and some of the deposit on the apartment at Quail Point," and also that Olga sold off "some jewelry, at one point $3,000 worth that she used to pay for rent or hotel rooms," though George did not specify which housing she paid for with this money. George testified that Olga was "in and out of jail" during this time and was finally evicted from Quail Point in April.

Olga lived in a motel from April until September. George's testimony was inconsistent as to the amount of support he provided during this time. He conceded that he "did not pay her bills completely." He testified that he paid for hotel rooms for a period of about six months, at approximately $1,600 a month; he also testified that he paid for hotel rooms from the end of May through mid-September (about three and a half months); and he also testified that "Olga did pay for a certain amount of hotel rooms herself and she was living separate from me and she lived in different hotel rooms and paid her own way with her own money. . . . I don't know exactly, but somehow she paid her own way."

On September 11, 2010, Olga, George, and Linda moved into an apartment at Archstone Del Mar and lived there together until November, when Olga and George annulled their marriage. George testified that the money to pay the first few months' rent at Archstone Del Mar was borrowed; Olga testified that it was Richard who provided the money, in the approximate amount of $2,124.

The trial court's equal division of expenditures assumed a stable and consistent living arrangement throughout the year. In such cases the formula used by the trial court would likely stand up to appellate review. The evidence in this case, however, shows that George supported himself throughout the year while supporting Olga and Linda only sporadically. There appear to have been substantial periods of time when they were living apart and George was paying for his own residence but not Olga's. There is thus a significant risk that the formula used by the trial court overstated George's contributions to Olga's and Linda's support. We remand so that the trial court

can tailor its decision to the unique facts of this case when calculating the amount of support that George provided.[15]

### C.    The Trial Proceedings Did Not Violate Due Process.

Olga challenges the result below on two procedural grounds:  her lack of an interpreter and the poor quality of her telephone connection.  Although she does not cite any legal authority for these arguments, we will treat them as allegations that the trial proceedings failed to satisfy due process.

First, Olga contends that she had difficulty communicating with the trial court and that she should have been provided a Russian interpreter.  She does not direct us to any point in the record where she made such a request, but we review the issue for plain error.[16]

Whether to appoint an interpreter is dependent on a number of factors, including "[the party's] ability to understand English, [the party's] ability to speak English, the nature of the issues to be litigated, and the anticipated complexity or subtlety of the trial testimony."[17]  These factors are best weighed in the first instance by the trial court in the exercise of its discretion.  The record in this case shows that despite occasional misunderstandings between Olga and the trial court, she comprehended and

---

[15]    Because we remand for a recalculation of Richard's support obligation, Olga's appeal from the trial court's denial of her motion to alter or amend the judgment under Civil Rule 59 is moot.  We leave it to the trial court's discretion as to whether, on remand, it will consider the evidence that Olga tardily submitted with that motion.

[16]    *In re Tammy J.*, 270 P.3d 805, 810 n.9 (Alaska 2012) ("[A] *pro se* litigant who fails to raise an issue below should not be able to raise the issue on appeal absent plain error." (quoting *Maness v. Daily*, 184 P.3d 1, 9 n.25 (Alaska 2008))).

[17]    *Vui Gui Tsen v. State*, 176 P.3d 1, 8 (Alaska App. 2008) (citing *Nur v. State*, 869 N.E.2d 472, 478-79 (Ind. App. 2007)).

reacted to the testimony being given, spoke cogently on her own behalf, and was able to make herself understood. On those few occasions when the trial judge appeared confused by something Olga said, he asked her to repeat herself and she did so. Her pro se pleadings do not demonstrate any significant difficulty with written English. Although we encourage trial courts to assess the need for interpreters for pro se litigants even in the absence of any formal request, the record in this case shows no abuse of the trial court's discretion in failing to provide one sua sponte.

Second, Olga argues that disruptions in her telephone connection during the trial caused her to miss relevant testimony and caused the trial court to misunderstand some of the evidence. We reject this argument as well. Olga initially had trouble calling in, but the court did not take any testimony until she had been connected. A subsequent phone disruption occurred during George's testimony, but the substance of the testimony was repeated after the connection was reestablished, and Olga was given the opportunity to cross-examine, which she declined.[18] And although the trial judge on occasion asked speakers to repeat themselves because of the erratic quality of the telephone connection, there is no evidence that he ultimately failed to hear or understand any evidence or argument.[19]

---

[18] There were also phone disruptions during Richard's discussion of case law and the trial judge's oral decision. Neither disruption caused Olga to miss the presentation of evidence.

[19] Olga also contends that George's testimony was improperly admitted and should be stricken from the record because he was not a party. George's testimony was plainly relevant to the main issue in the case, the amount of any offsets against Richard's obligation of support, and the trial court properly admitted it over Olga's objection.

## V.    CONCLUSION

For these reasons, we VACATE the trial court's order and REMAND for findings consistent with this opinion.

CARPENETI, Justice, concurring.

I concur in this court's conclusion that the superior court's "fractional calculations," which assigned either half or two-thirds of George's entire earnings and expenditures to Olga's support (depending on whether Linda lived with Richard or Linda lived with Olga), on the assumption that Olga was living with George, failed to account for evidence that George's support was sporadic and variable due to the significant disruptions in Olga's and Linda's living arrangements. But I would not reverse the superior court's conclusion that George's contributions were sufficient to offset Richard's support obligation if the superior court had made specific findings, based on evidence in the record, that the totals spent by George for Olga's benefit were sufficient to meet the federal standard when added to other sources of support from Richard.

I reach this conclusion because George's testimony, which the superior court appears to have accepted, included the declarations that he paid for "about six months" or "at least six months" of hotel bills at $1,600 per month for a total of $9,600; two months of apartment costs totaling $2,200; 12 months of phone costs at $130 per month totaling $1,560; four months of electric bills at $35 per month totaling $140; and food either "all through the year" or starting in "March, April, May, whatever" at about $400 per month totaling at least $2,400. Adding even the lower of the sets of these figures to the miscellaneous offsets found by the court (Olga's earnings of $175, Richard's payments of $1,458, and Richard's support after he relinquished guardianship and before the end of 2010 at a "minimum" of $275), the total of $17,808 exceeds the amount Richard was required to pay under 8 U.S.C. § 1183(a)(1)(A), $16,112.

Thus, while I conclude that the record could have supported findings sufficient to support the superior court's judgment, a remand is appropriate to allow that court in the first instance to make such specific findings.