WILLIAM P., Appellant,

v.

TAUNYA P., Appellee.

No. S–13993.

Supreme Court of Alaska.

Aug. 26, 2011.

Herbert M. Pearce, Anchorage, for Appellant.

Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

### OPINION

FABE, Justice.

## I. INTRODUCTION

The superior court awarded sole legal custody of two children to their mother, Taunya, upon her motion to modify custody. Their father, William (Bill), appeals, arguing that the superior court improperly weighed the best interests of the children. Because we conclude that there was sufficient evidence to support the superior court's conclusions and that the superior court did not abuse its discretion, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Bill and Taunya P. were married on February 14, 1998. They had two sons, born in 1998 and 2000. Bill and Taunya were divorced on December 29, 2008. Under the terms of a settlement agreement, they shared legal and physical custody. At that time, both parties resided in Fairbanks. Bill worked for a military contractor and Taunya worked as a teacher's aide. Taunya had discussed moving to North Dakota, where she grew up. In Bill's and Taunya's divorce decree the superior court ordered that if Taunya were to move to North Dakota, their sons would spend the school year with her and summer and winter vacations with Bill.

Taunya moved to Mandan, North Dakota, a suburb of Bismarck, in August 2009. Bill relocated to Anchorage. On September 18, 2009, Taunya requested sole legal custody. Taunya alleged that Bill had attempted to intimidate her into remaining in Alaska. She also alleged that, while she was still in Alaska, Bill had sometimes not allowed her to have contact with the children and refused to seek routine medical care for one son's asthma. Taunya claimed that communication with Bill had deteriorated and that Bill had undermined the children's relationship with her. Taunya requested that Bill be allowed only monitored telephonic visitation.

Bill responded and requested that the court award sole legal custody of the children to him. Bill argued that Taunya's erratic behavior was to blame for many of the parties' problems. Bill claimed that Taunya had limited his telephone contact with the children. Bill claimed that on three occasions Taunya disconnected the telephone cord from the wall when his conversation with the children went past 9:00 p.m., the children's designated bedtime. Bill alleged that Taunya refused to cooperate in setting up a web camera system so that he could communicate with his children. Bill disputed that he was at fault for their communication difficulties, pointing to sixty emails he sent to Taunya to bolster his argument that he was supporting communication between them.

On October 9, 2009, Taunya replied to Bill's opposition and cross-motion to modify custody. She characterized Bill's opposition as "filled with irrelevant and inconsequential accusations against Taunya." She again asserted that it was impossible for her to communicate with Bill, and that Bill, by disputing her reasons for moving to North Dakota, was "inappropriately involved in her choices." In responding to Bill's cross-motion, Taunya argued that it was in the best interests of the children to be with their mother. Bill responded with an affidavit on December 7, 2009, asserting that the best interests of the children justified custody with him.

On January 1, 2010, Bill remarried. His current wife has an ongoing custody dispute with her ex-husband over her two children from a previous marriage.

On December 11, 2009, the superior court appointed a child custody investigator. The investigator had earlier served as the investigator during the parties' divorce. The investigator submitted his report on June 29, 2010. The investigator found that "[t]his is without a doubt the most contentious, unreasonable[,] and manipulative pair of parents with whom" he had ever dealt. The investigator wrote that Bill "frequently employs sarcasm" towards Taunya and "subtly undermines" her through his communications with their sons. But the investigator also wrote

that "Taunya is not the innocent victim.... In phone calls and emails, she nitpicks, whines, complains, and appears to have difficulty taking responsibility for her actions." The investigator noted that Taunya admitted slapping her children and admitted that she once "manhandled her aged mother-in-law." The investigator accordingly wrote that "neither parent is appropriately supportive of the boys maintaining a loving relationship with the other parent." The report also stated both children "expressed strongly and repeatedly that they wished to live with their father for the bulk of the year"; one boy explained that he preferred his father because he did not "like being yelled at and smacked."

The investigator concluded by noting that Taunya and Bill "do not appear to be able to have a civil discussion about the boys or to make mutually supportive decisions on behalf of their children." The investigator recommended that the custody arrangement be reversed: the children would spend the school year with Bill and summers with Taunya. The investigator based this recommendation on two rationales. First, he referred to "Taunya's growing harshness as a parent, especially her physical abuse of the boys and her escalation of the physical struggle with her son; these reactions are likely to increase as the boys enter their full adolescence with their own power issues and typical disrespectfulness." The second rationale was the preference of the two boys to be with their father. The investigator also recommended that the parties not communicate directly but instead use a "third party who will pass communications."

A hearing was held on July 20, 21, and 22. The superior court held that "[b]ecause the court concludes that the parties['] history of noncooperation has adversely impacted the boys to the extent that a change in legal custody is necessary, Taunya's motion for sole custody is granted." The superior court also reduced Bill's visitation to one week at Christmas and six weeks during the summer.

## III. STANDARD OF REVIEW

Alaska Statute 25.20.110(a) provides that an "award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." We will reverse a custody modification order "only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[1] An abuse of discretion in child custody awards occurs when "the trial court considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors."[2] Factual findings are clearly erroneous if a review of the record leaves us "with the definite and firm conviction that the superior court has made a mistake."[3] The trial court's factual findings enjoy particular deference when they are based "primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[4]

## IV. DISCUSSION

### A. Custody

Bill does not contest that there was a substantial change of circumstances warranting modification of child custody in accordance with AS 25.20.110(a). But he argues that the trial court erred in finding that it would be in the boys' best interests for Taunya to have sole legal custody. We disagree. The trial court considered all relevant factors, and we cannot conclude that it clearly erred in its factual findings or abused its discretion in deciding to award custody to Taunya.

Alaska Statute 25.20.110(g) provides that "[i]n making a determination of the best in-

1. *Long v. Long,* 816 P.2d 145, 150 (Alaska 1991) (internal quotation marks omitted).

2. *Id.*

3. *D.M. v. State, Div. of Family & Youth Servs.,* 995 P.2d 205, 207–08 (Alaska 2000).

4. *Misyura v. Misyura,* 242 P.3d 1037, 1039 (Alaska 2010) (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 646 (Alaska 2005)).

terests of the child, the court shall consider the factors under AS 25.24.150(c)." Alaska Statute 25.24.150(c) lists nine factors:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

## 1. Physical, emotional, mental, religious, and social needs of the children

The superior court found that the parties' sons "have suffered emotional damage because of the conflict between their parents." The superior court found that Bill in particular was to blame for this conflict and therefore Taunya was "the only parent able to meet the children's special emotional needs."

Bill argues that Taunya shared responsibility for the tension between them and its impact on the children. But we have reasoned that "joint legal custody is inappropriate if the parents cannot communicate effectively."[5] Because there was evidence that Bill was more to blame for his and Taunya's poor communication, it was not clearly erroneous for the superior court to use the first factor to support awarding sole legal custody to Taunya.

## 2. The capability and desire of each parent to meet the children's needs

The superior court distinguished between the children's emotional needs and their physical, educational, and social needs.

### a. Emotional needs

The superior court found that "Taunya is the only parent able to meet the children's special emotional needs." The court explained that Bill's involvement with his current wife's custody battle would expose the children to more of the same domestic conflict they had already experienced. The superior court emphasized Taunya's track record as a primary caregiver, and found that Bill's "unwillingness to support the boys emotionally throughout the last year and instead to advance his own victimization narrative shows a complete lack of understanding of the boys['] needs." Diana Jacobsen, the boys' North Dakota therapist, testified that the boys had absorbed negative ideas about their mother that they had heard from their father. Bill acknowledged that his frustration with Taunya's move to North Dakota probably "spilled over to the kids." Bill recorded several conversations between himself and the children and submitted those recordings to the superior court. In these recordings Bill blames and criticizes Taunya for moving the children to North Dakota. Because there was evidence that Bill was harming the children's emotional needs by undermining Taunya, it was not clearly erroneous to conclude that this factor favored Taunya.

### b. Other needs

The superior court separately found that Taunya was also "better able to meet the

---

**5.** *Cusack v. Cusack,* 202 P.3d 1156, 1160 (Alaska 2009).

children's physical, educational, and social needs." The superior court emphasized Taunya's "track record" as the parent "who primarily cared for the boys during the marriage" and after they moved to North Dakota. As to the children's physical needs, one witness testified that Bill obtained two dogs against the advice of the children's physicians. And Taunya generally criticized Bill's failure to take their son's medical needs seriously. Regarding the boys' social needs, Diana Jacobsen testified at the hearing that Bill's negative comments about Taunya could result in unhealthy attitudes toward women later in life.

Bill argues that based on his parenting performance during the parties' shared custody in Alaska, there is no basis to conclude that Taunya would be a superior caregiver. Bill notes that the custody investigator found that the children could be expected to function in either parent's custody and repeatedly emphasizes that the custody investigator recommended that primary custody be with him.

■ We have explained that "custody investigators are simply expert witnesses and that their recommendations should be evaluated on a case-by-case basis, in the same manner as testimony presented by other witnesses."[6] In *Ebertz v. Ebertz*, we found that the superior court did not abuse its discretion by rejecting a custody investigator's analysis and recommendations.[7] We stated that the "critical question . . . is not whether the superior court erred in rejecting the custody investigator's proposed decision, but whether the evidence as a whole supports the court's decision."[8] Here, the child custody investigator acknowledged that the children could function in either parent's custody, and it was not clearly erroneous for the superior

court to select the parent not recommended by the investigator.

### 3. The children's preference

The superior court discounted the children's preference to live with Bill. According to the custody investigator, both children "expressed strongly and repeatedly that they wished to live with their father for the bulk of the year." And Bill testified that the children voluntarily call him nearly every day. But the superior court found that, at ages eleven and ten, the children did not have "sufficient age or capacity to express a preference." Alaska Statute 25.24.150(c)(3) provides that a child's preference is to be considered "if the child is of sufficient age and capacity to form a preference." We conclude that the superior court's finding that the boys lacked the age and capacity to form a preference was not clearly erroneous. But, of course, as the boys get older, the trial court will be more inclined to respect their preference.[9]

### 4. The love and affection existing between the children and each parent

The superior court found that love and affection existed between the children and both parents.

### 5. The length of time the children have lived in a stable, satisfactory environment and the desirability of maintaining continuity

The superior court found that the fifth factor of stability and continuity favored Taunya. The court found that "the boys have done well in Taunya's primary care." It found that the only area "where the boys are reported to have difficulty is in their

---

6. *Ebertz*, 113 P.3d at 647.

7. *Id.*

8. *Id.* at 647–48; *see also Chase v. Chase*, 109 P.3d 942, 945 (Alaska 2005) ("We have previously held that the trial court is not obligated to adopt a custody investigator's recommendations."); *Evans v. Evans*, 869 P.2d 478, 480 (Alaska 1994) (upholding trial court's decision to grant custody to father even though custody investigator recommended granting custody to mother); *Nichols*

*v. Mandelin*, 790 P.2d 1367, 1373 (Alaska 1990) (affirming trial court's decision to grant custody to mother even though trial court's decision contradicted custody investigator's recommendation that parents share custody).

9. *See Valentino v. Cote*, 3 P.3d 337, 340–41 (Alaska 2000) (affirming custody decision which placed "substantial reliance" on 14–year–old child's preference).

relationship with their mother and this difficulty can be specifically attributed to Bill's negative leadership." The child custody investigator found that the children were doing well in school, though they were having some difficulty making friends in North Dakota. At the hearing, Taunya noted that she has many family connections in North Dakota. Taunya also characterizes Bill's home as "newly formed and riddled with conflict" and notes that Bill also moved away from Fairbanks, where the boys had been raised since birth.

Bill disputes the existence of Taunya's positive "track record." Bill notes that, at the time of the custody hearing, Taunya had had school-year custody for only one year, whereas Bill and Taunya had previously shared custody in Alaska for two years. Bill also argues that the North Dakota arrangement was so recent that it could not be relied on for purposes of establishing continuity. Bill notes that the children spent their whole lives prior to the move in Alaska and that Taunya had family in Anchorage.

We have explained that the stability and continuity factor is not limited to geographic continuity and stability, but instead encompasses the "totality of the circumstances [the children] were likely to encounter in their respective parents' homes."[10] Given this broad inquiry, we conclude there was sufficient evidence to support the superior court's finding on this factor.

6. **The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the children**

The superior court found that the sixth factor of willingness to foster a close relationship with the other parent strongly favored Taunya. The court found that while Taunya had promoted the children's relationship with Bill, Bill had only undermined their relation-

ship with Taunya. The custody investigator found that neither party was sufficiently supportive of a relationship with the other parent, but found fault with "Bill far more than Taunya." The investigator found that "at times [Bill] ... has not been supportive of Taunya while on phone calls with the boys." But the investigator also found that Taunya had not adequately facilitated communication with Bill and "had not followed through on [e]nsuring regular video [instant messaging] between the boys and their father" and that she "had imposed the arbitrary time of 9 pm" to end conversations.

Bill argues that he allowed the children free access to a computer and phone to contact their mother whenever they chose, whereas Taunya limited the children's access to these things. In their interviews with the custody investigator, the boys confirmed Bill's characterization. Taunya counters that the boys could talk to their father every day at 8:30 p.m. but that she would insist on a 9:00 bedtime. She admits unplugging the phone cord to end these calls on several occasions, arguing that she did so only after Bill disregarded her previous requests to end the calls promptly at 9:00.

Bill points to various efforts he undertook to support the children's relationship with Taunya. Bill argues that he attended counseling on how to handle blended families. Bill also points to emails he sent to Taunya in which he attempted to establish a spirit of cooperation. Taunya counters by arguing that the negative comments Bill made about her to the boys were an attempt to undermine their relationship with her. Taunya also notes various ways she has attempted to support the boys' relationship with Bill, such as mailing him school work or encouraging the children to make him presents.

We have reasoned that when parents reside at a great distance from each other, it is appropriate to give greater weight to this factor.[11] In *Silvan v. Alcina,* we explained

---

**10.** *Evans,* 869 P.2d at 482; *see also Rooney v. Rooney,* 914 P.2d 212, 217 (Alaska 1996) ("Continuity and stability for a child come not only from staying in the same house, or going to the same school. Consideration should also be given to social and emotional factors such as who the primary care-giver was for the child and whether

the child would be separated from siblings or family members if he was placed with one parent rather than another.").

**11.** *Blanton v. Yourkowski,* 180 P.3d 948, 951 (Alaska 2008); *Silvan v. Alcina,* 105 P.3d 117, 121 (Alaska 2005).

that "[i]t is essential to have a custodial parent willing to foster an open relationship with the other parent when a great distance separates the children from the non-custodial parent."[12] In this case, there is evidence that both Bill and Taunya at times supported and at other times sabotaged the boys' relationship with the other parent. Both allowed communication between the children and the other parent but both also undermined the authority of the other parent in various ways. The child custody investigator and Diana Jacobsen both testified that Bill was more culpable in his attempt to undermine Taunya than Taunya was to undermine him, and it was not clearly erroneous for the superior court to have held that the sixth factor favored Taunya.

**7. Any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents**

The superior court did not find there to be child abuse, child neglect, or domestic violence. Taunya admits there was a "single instance of Taunya slapping her disrespectful son." The superior court characterized Taunya's slapping as "not grossly inappropriate" because Bill and Taunya had "used corporal punishment before." Shortly after Taunya and the children arrived in North Dakota, Bill called North Dakota child protective services reporting verbal and physical abuse. This contact resulted in several recommendations for Taunya but no continued involvement with protective services. Taunya argues that her slapping did not constitute abuse and that in any event she has responded to the slapping incident remorsefully and positively. And Diana Jacobsen agreed that Taunya did not present the characteristics of a classic abuser and that she demonstrated appropriate remorse for the slapping incident. The superior court did

not commit clear error in finding there to be no physical abuse.

**8. Evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the children**

The superior court did not find any evidence of substance abuse. The investigator also found no evidence of substance abuse.[13]

**B. Visitation**

■ The superior court shortened Bill's visitation to one week at Christmas and six weeks during the summer. The superior court reasoned that "it is necessary to reduce the contact the boys have with their father in order to dilute the adverse impact he is having on them."

Bill argues that "the Superior Court's ... reduction in his visitation rights was not supported by the record and should be reversed." We view this as a very close question. Bill argues that all "the experts in this case recommended there should be no reduction in" Bill's visitation. Taunya counters that this statement is incorrect and that Diana Jacobsen recommended reduced visitation. But at the hearing, when the court asked Diana Jacobsen what the effect would be of restricting Bill's visitation, Jacobsen responded that she would not recommend reduced visitation at that time because the boys "need their father just as much as they need their mother."

We have explained that "the cooperation necessary to allow more liberal visitation is far less than that needed for joint custody."[14] We have also held that noncustodial parents "have certain residual rights and responsibilities including the right and responsibility of reasonable visitation."[15] The treatise *Modern Child Custody Practice* explains that visitation is a "natural right of the noncustodial

---

**12.** *Silvan,* 105 P.3d at 121.

**13.** We do not discuss the ninth factor because the superior court did not rely on it. *See McDanold v. McDanold,* 718 P.2d 467, 469 (Alaska 1986) (explaining that the superior court need only consider all relevant statutory best interests factors).

**14.** *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1191 (Alaska 1987).

**15.** *J.F.E. v. J.A.S.,* 930 P.2d 409, 413 (Alaska 1996) (quoting AS 47.10.084(c)) (internal quotation marks omitted).

parent that may not be taken away absent extraordinary circumstances." [16]   And in *Lone Wolf v. Lone Wolf,* we found that the superior court had abused its discretion in denying the father's request to have visitation with his children while their mother worked week-long stints at her job as a correctional officer without making findings to support the restrictive award.[17]   Here, while we conclude that the superior court did not abuse its discretion in light of its findings about the harm to the boys' relationship with their mother caused by Bill's denigration of Taunya in front of them, we assume that the superior court will have the opportunity to revisit this question if Bill ceases his ongoing "campaign" to undermine Taunya.   And, as we have recognized, as the boys get older and more mature, their reasoned preference regarding custody will be entitled to "substantial reliance" and is "not so lightly to be disregarded." [18]

## V.   CONCLUSION

We AFFIRM the decision of the superior court.

CHRISTEN, Justice, not participating.

---

**16.**   1 Jeff Atkinson, Modern Child Custody Practice § 5.2 (2d ed. 2010) (internal quotation marks omitted); *see also id.* at § 5.13 ("The standard for placing restrictions on visitation is similar to the standard for denial of visitation.").

**17.**   *Lone Wolf,* 741 P.2d at 1190.

**18.**   *Valentino v. Cote,* 3 P.3d 337, 341 (Alaska 2000); *see also Yvonne S. v. Wesley H.,* 245 P.3d 430, 433, 435 (Alaska 2011) (using mature child's preference as a "major factor" in making custody determination).