NOTICE
*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| THOMAS G., | ) | |
| | ) | Supreme Court No. S-15123 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-11-00654 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SONYA G., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1544 – June 24, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Thomas G., pro se, Portland, Oregon, Appellant. Sonya G., pro se, Soldotna, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

# I.     INTRODUCTION

A divorcing husband and wife with a history of domestic violence sought custody of their teenage son. During the divorce proceedings the wife filed for a domestic violence protective order against the husband. The husband moved for the appointment of counsel in both the divorce case and the domestic violence protective order proceeding because the wife had obtained representation from the Alaska Network on Domestic Violence and Sexual Assault. The superior court granted the husband's motion for representation in the divorce case but denied the husband's motion regarding

---

[*]     Entered under Alaska Appellate Rule 214.

representation in the protective order proceeding. Following a two-day trial the superior court granted the wife's request for sole legal custody and primary physical custody of the couple's minor child. We affirm the superior court's custody determination because the teenage son expressed a strong preference for living with his mother and because the superior court properly considered all other relevant factors in its custody determination based on the best interests of the child.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Thomas and Sonya G.[1] began their relationship in 1991 and married in Oregon in 1998. Together they had three children. The two older children have already reached the age of majority; this appeal is limited to the custody of their youngest son, who turns 18 in October 2015.

The family moved to Alaska in 2000. Domestic violence plagued Thomas and Sonya's relationship. Their eldest child was conceived in Oregon when Sonya was 15 years old, raising the question of statutory rape.[2] In 2000, shortly before moving to Alaska, Thomas violated a restraining order that Sonya held under a domestic violence protective order entered in Oregon. In 2005 Sonya befriended a man whom she knew to be a convicted sex offender. Sonya separated from Thomas in 2006 and took the three children to live with the other man in Pennsylvania. Sonya left the children unsupervised with the man on multiple occasions. A 2006 report introduced at trial suggested that there was evidence that the man sexually molested at least one of the children.

---

[1]    We use initials in lieu of the parties' last names to protect the family's privacy.

[2]    *See* 1991 Or. Laws Ch. 628 (H.B. 2544) (codified at OR. REV. STAT. § 163.355(1) (2015)).

In 2006, at Thomas's urging, Sonya returned to Alaska. Although the family was reunited, the domestic violence continued. In March 2011 Sonya filed a petition for a domestic violence protective order, alleging that Thomas was "physically [and] emotionally abusive to the children" and to her. This petition was based on an incident in which Sonya alleged that Thomas struck their middle child with a belt. In April 2011 the superior court granted Sonya's petition for a protective order. It found by a preponderance of the evidence that Thomas had committed a crime involving domestic violence and that he represented a credible threat to Sonya and the children. Their youngest son has lived with Sonya since March 2011.

## B. Proceedings

### 1. Preliminary proceedings and the second domestic violence protective order

Thomas and Sonya filed a petition for dissolution of their marriage in June 2011. In August 2011 Thomas moved to convert the dissolution to a divorce and requested sole legal custody and primary physical custody of their youngest son, then almost 14 years old. In her answer Sonya requested sole legal custody and primary physical custody of their son. In November 2011 Sonya obtained legal counsel from the Alaska Network on Domestic Violence and Sexual Assault (ANDVSA) and moved for interim custody and child support. Thomas then moved for appointment of counsel from the Office of Public Advocacy (OPA).[3] In January 2012 the superior court granted his

---

[3]     *See In re Alaska Network on Domestic Violence & Sexual Assault*, 264 P.3d 835, 838 (Alaska 2011) (holding that ANDVSA is a public agency for purposes of AS 44.21.410(a)(4), which requires that OPA "provide legal representation . . . to indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency").

motion, and Carol Brenckle entered a notice of appearance on Thomas's behalf.[4]

The superior court held two evidentiary hearings in February 2012 to address Sonya's motion for interim custody and child support. The second hearing was scheduled in part to accommodate Thomas's request for a continuance. The superior court heard testimony from Sonya, Thomas, an Office of Children's Services (OCS) investigator, their son's middle school principal, and a witness who had observed Thomas and the child together.

In April 2012 Sonya filed a second petition for a domestic violence protective order. Sonya sought both a temporary 20-day order and a long-term protective order. She alleged that Thomas had committed acts of domestic violence against her and the children over the course of their 20-year relationship. She alleged that he hit her and the children and that most recently Thomas had slapped her across the face in February 2011. She also alleged that he had struck their middle child with a belt and that he had violated the existing restraining order from the previous domestic violence protective order by sending an unwarranted email regarding ongoing legal proceedings and by parking his car approximately 250 feet from her property.

ANDVSA represented Sonya in the petition for the second domestic violence protective order, and Thomas moved for the appointment of counsel in that matter. Thomas also moved to consolidate the divorce and domestic violence protective order proceedings, asserting that "[t]he court will be in a better position to make a

---

[4]     Prior to the appointment of counsel, Thomas had filed several motions requesting that the superior court produce records held by the Office of Children's Services (OCS), other state agencies, and individuals. The superior court denied these motions, noting that "the court does not provide this type of information to parties." The superior court recommended that Thomas "consult with his attorney regarding his trial strategy and his desire to compel the production of confidential records from [OCS]." Brenckle obtained some of these records by subpoena.

determination on custody and visitation that reflects the best interest of the parties' minor child if the [domestic violence] case[] and the [d]ivorce case are combined." The superior court denied both motions. Regarding the motion for appointment of counsel, the superior court concluded that Thomas was not entitled to public representation in the domestic violence protective order action despite the fact that Sonya was receiving representation from ANDVSA. The court reasoned that representation at public expense was not warranted because "[w]hile temporary custody of [the child] may be implicated in this matter, [Thomas and Sonya] have an open pending custody case . . . and the custody determination in that matter will control any temporary custody decisions made in [the] domestic violence case."

The domestic violence protective order hearings took place in May and June 2012. The superior court found by a preponderance of the evidence that Thomas violated the previous domestic violence protective order "by virtue of the content of his e-mail communication to [Sonya] dated 9-20-2011." The protective order granted Sonya temporary custody of their son and went into effect on June 12, 2012. Six days later, the superior court granted Sonya's motion for interim custody of their son based on evidence presented by the parties in the February 2012 divorce hearings.

## 2. The divorce trial

In August 2012 the superior court held a trial to resolve the custody and property issues remaining in Sonya and Thomas's divorce. Both parties were represented by counsel at trial. The superior court heard testimony from nine witnesses, including Sonya; Thomas; a physician who had treated Thomas in the past for back injuries; the OCS investigator who offered testimony at the interim custody hearing; another OCS investigator; and a custody investigator who had prepared a report for the case.

At trial Thomas's counsel, Carol Brenckle, was hampered by serious medical difficulties. On the first day of trial Brenckle noted that she was in significant pain. The next day she announced that she was in more pain than the day before and that she had taken a pain pill. Later, she told the court that she did not believe she could do an effective job for Thomas at closing argument because of her pain and medication. She requested that the court allow the parties to submit written closing arguments. The court, Brenckle, and opposing counsel agreed upon the submission of written closing arguments in late August 2012. After requesting an extension, Brenckle submitted her written closing argument in September 2012. She died in November 2012. In March 2013 the superior court issued a final decree for divorce and published its written findings of fact and conclusions of law, granting Sonya sole legal custody and primary physical custody of their teenage son.

### 3. Post-trial proceedings

After Brenckle's death but before the superior court's final custody determination, Thomas moved for the appointment of new counsel. The superior court granted his motion, and Gordon Goodman filed a notice of appearance on Thomas's behalf in January 2013.

Following the superior court's custody determination, Thomas filed a motion for clarification. Specifically, Thomas asked the court to clarify certain details of the visitation component of the order, as well as Thomas's authority to require counseling for their son. In July 2013 Thomas filed two motions requesting a hearing regarding the issues raised in his motion for clarification. One motion was filed by his appointed counsel, Goodman, and Thomas filed the other pro se. Thomas also filed a pro se motion to enforce visitation.

Less than a month later, Goodman filed a motion to withdraw as counsel. In his affidavit in support of his motion to withdraw, he alleged that Thomas was

confronting him at the courthouse and behaving in an increasingly harassing and threatening manner. Goodman reported that in one conversation, Thomas had slipped him a piece of paper with Goodman's home address written on it and Goodman took this as a threat against his family. In October 2013 the superior court held a hearing addressing Thomas's motions for clarification and enforcement and Goodman's motion to withdraw. Thomas did not receive advance notice of the hearing, but the superior court contacted him in time to participate telephonically. During the course of the hearing, Thomas objected to Goodman's motion to withdraw and alternatively requested the appointment of new counsel. Ultimately, the superior court granted Goodman's motion to withdraw but did not appoint new counsel for Thomas.

Thomas appeals the superior court's grant of sole legal and primary physical custody of the child to Sonya.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in its determinations of child custody. We will not set aside the superior court's child custody determination unless its factual findings are clearly erroneous or it abused its discretion."[5] A factual finding is clearly erroneous "when our review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.' "[6] "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting

---

[5] *Limeres v. Limeres*, 320 P.3d 291, 295-96 (Alaska 2014) (footnote omitted) (citing *Cusack v. Cusack*, 202 P.3d 1156, 1158-59 (Alaska 2009)).

[6] *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

evidence.' "[7]  There is an abuse of discretion in a child custody case "if the trial court considered improper factors or improperly weighed certain factors in making its determination."[8]

We review a trial court's discovery rulings for abuse of discretion.[9] "We will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated."[10] "A refusal to grant a continuance constitutes an abuse of discretion 'when a party has been deprived of a substantial right or seriously prejudiced.' "[11] We review a ruling by a trial court allowing an attorney to withdraw for abuse of discretion.[12] We will not reverse a trial court under the abuse of discretion standard where a party has not shown that an error was harmful or prejudicial.[13]

## IV.    DISCUSSION

Thomas argues that various procedural decisions made by the superior court violated his due process rights and constituted an abuse of discretion.  He argues that the superior court's denial of his motion for appointed counsel in the domestic violence

---

[7]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007)).

[8]     *Limeres*, 320 P.3d at 296.

[9]     *See Kestner v. Clark*, 182 P.3d 1117, 1121-22 (Alaska 2008).

[10]     *Wagner v. Wagner*, 299 P.3d 170, 173 (Alaska 2013) (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)).

[11]     *Id.* at 175 (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 986-87 (Alaska 1982)).

[12]     *See Devincenzi v. Wright*, 882 P.2d 1263, 1265 (Alaska 1994).

[13]     *See Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012).

protective order proceeding contravened AS 44.21.410(a)(4) and violated his due process rights. He also argues that the superior court abused its discretion by denying his motion for a continuance of the interim custody hearing and by granting his second appointed counsel's motion to withdraw after the final custody determination.

## A. The Superior Court Did Not Abuse Its Discretion In Making Its Final Custody Determination.

### 1. Thomas's right to counsel

Alaska Statute 44.21.410(a)(4) requires that the Office of Public Advocacy "provide legal representation . . . to indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency." We have held that ANDVSA, which represented Sonya in both the divorce and domestic violence protective order proceeding, qualifies as a public agency for purposes of the statute.[14] The superior court properly applied the statute and granted Thomas's motion for appointed counsel in the divorce case, which involved child custody matters.

We do not reach the question whether AS 44.21.410(a)(4) required the appointment of counsel to Thomas in the domestic violence protective order proceeding, or the question whether the superior court should have consolidated the domestic violence proceeding with the divorce case, because Thomas's appeal arises solely from the divorce and Thomas may not use this appeal to collaterally attack a separate final judgment.[15] We have repeatedly warned that "[t]he remedy for legal error is appeal, not collateral attack."[16] If Thomas believed that the failure to appoint counsel in the

---

[14] *See In re Alaska Network on Domestic Violence & Sexual Assault*, 264 P.3d 835, 839-41 (Alaska 2011) (holding that ANDVSA is a qualifying public agency).

[15] *See Villars v. Villars*, 336 P.3d 701, 710 (Alaska 2014).

[16] *Wall v. Stinson*, 983 P.2d 736, 741 (Alaska 1999) (citing *Fauntleroy v.*
(continued...)

domestic violence protective order proceeding was error, he could have filed a timely appeal of that order, but he did not do so. Moreover, even if Thomas had successfully defended against issuance of the domestic violence protective order, there was ample evidence to support the superior court's award of sole legal and primary physical custody of their son to Sonya.

### 2. The superior court's custody determination

Alaska Statute 25.24.150(c) requires courts to "determine custody in accordance with the best interests of the child under AS 25.20.060-25.20.130." The statute sets out nine factors for trial courts to consider when making a best interest determination. Here the superior court considered each relevant factor. It properly placed considerable weight on the teenage son's expressed preference to live with his mother. Alaska Statute 25.24.150(c)(3) requires courts making custody determinations to consider "the child's preference if the child is of sufficient age and capacity to form a preference." We have noted that as children "get older, the trial court will be more inclined to respect their preference,"[17] and we have held that "a teenager's preference can be a deciding factor because, while a young child's preferences [may be] unreliable, 'a relatively mature teenager's reasoned preference is not so lightly to be disregarded.' "[18]

---

[16](...continued)
*Lum*, 210 U.S. 230, 237 (1908)); *see also Villars*, 336 P.3d at 710 (quoting *Wall*, 983 P.2d at 741); *Simmonds v. Parks*, 329 P.3d 995, 1011 (Alaska 2014) (quoting *Wall*, 983 P.2d at 741).

[17]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *William P. v. Taunya P.*, 258 P.3d 812, 816 (Alaska 2011)) (internal quotation marks omitted).

[18]     *Id.* (quoting *Yvonne S. v. Wesley H.*, 245 P.3d 430, 433 (Alaska 2011)); *see also William P.*, 258 P.3d at 816 (citing *Valentino v. Cote*, 3 P.3d 337, 340-41 (Alaska 2000)); *Valentino*, 3 P.3d at 340-41 ("[T]rial courts should place weight upon an older
(continued...)

At the time of the trial, the parties' son was two months shy of his 15th birthday. The superior court found that he was of sufficient age and capacity to form a preference regarding custody and that his preference was to be in Sonya's primary physical custody with no increase in visitation from Thomas. Their son's middle school principal testified that he was a strong student academically, and the OCS custody investigator testified that the son did not want to spend time with Thomas because of a history of corporal punishment and the stress of Thomas's frequent comments and complaints to him about the divorce. Thomas does not dispute his son's preference or his son's capacity to form such a preference.

The superior court did not err in concluding that both Thomas and Sonya had "engaged in more than one incident of domestic violence,"[19] and that both Thomas and Sonya had triggered the rebuttable presumption under AS 25.24.150(g) "that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." The superior court noted that Thomas's statutory rape of Sonya at age 15 likely constituted an act of

---

[18](...continued)
child's preferences.").

[19]     *See* AS 25.24.150(h) ("A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.").

domestic violence by Thomas. We agree. Alaska Statute 18.66.990(3) establishes that "a crime against the person under AS 11.41"[20] or "an offense under a law or ordinance of another jurisdiction having elements similar to these offenses" constitutes an act of domestic violence when committed by "a household member against another household member."[21] At the time their first child was conceived, Thomas was 23 but Sonya was only 15 years old. Oregon Revised Statute 163.355 classifies "sexual intercourse with another person under 16 years of age" as a "Class C felony"[22] punishable by a sentence of up to five years in prison.[23] The Oregon statute is similar to AS 11.41.436, sexual abuse of a minor in the second degree, which makes sexual intercourse with a 15-year-old a crime when the offender is at least four years older than the victim.[24] Therefore, the conception of their first child when Sonya was 15 years old constitutes an act of domestic violence under AS 18.66.990(3). Additionally, the superior court relied on Thomas's admission that he violated a domestic violence protective order in Oregon in 2000, which constitutes a crime of domestic violence under AS 18.66.990(3)(G).[25]

---

[20] AS 18.66.990(3)(A).

[21] AS 18.66.990(3).

[22] 1991 Or. Laws Ch. 628 (H.B. 2544) (codified at OR. REV. STAT. § 163.355(1) (2015)).

[23] 1971 Or. Laws Ch. 743 § 74 (codified at OR. REV. STAT. § 161.605(3) (2015)).

[24] AS 11.41.436(a)(1) provides that "[a]n offender commits the crime of sexual abuse of a minor in the second degree if . . . being 17 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least four years younger than the offender . . . ."

[25] *See* AS 18.66.990(3)(G) (establishing that violating a protective order constitutes a "crime involving domestic violence").

Finally, the superior court relied on the first domestic violence proceeding from 2011, in which Thomas admitted to striking his middle child with a belt, and the magistrate judge found by a preponderance of evidence that a crime of domestic violence had been committed. Thus, even if we were to ignore the domestic violence protective order proceeding that occurred after the divorce case had been filed, there is evidence to support the conclusion that Thomas had committed "more than one incident of domestic violence."[26]

Because the teenage son expressed a preference for living with Sonya and her history of domestic violence was more limited than Thomas's, and because the superior court properly considered all factors under AS 25.24.150(c), we affirm its decision to award sole legal custody and primary physical custody to Sonya.

**B.     The Superior Court Did Not Abuse Its Discretion By Denying The Discovery Requests Thomas Made To The Court.**

Prior to the superior court's appointment of counsel, Thomas filed several motions with the court seeking the release of information from the Department of Corrections, North Star Behavioral Health, the school district, the Connections Home School Program, and OCS. The superior court denied these motions, noting that "the court does not provide this type of information to parties."

Thomas could have obtained this information through other means, and in some instances, he did. Thomas's attorney, Brenckle, obtained some of the confidential OCS records by subpoena. The OCS investigator and the principal from their son's middle school testified in person at the February interim custody proceeding. There is no indication that Thomas or Brenckle ever subpoenaed records from North Star

---

[26]     AS 25.24.150(h).

Behavioral Health or the Department of Corrections, and Thomas fails to explain the relevance of these records or how he was prejudiced by their absence.

C. **Any Error In Granting Goodman's Motion To Withdraw As Thomas's Appointed Counsel Was Harmless Because It Occurred After The Entry Of Final Judgment In The Divorce.**

When Brenckle died, the superior court appointed Gordon Goodman to represent Thomas in the divorce proceedings. After the superior court issued its final custody determination, Goodman filed a motion for clarification of that order, which focused on visitation details and the provision of counseling for the child. After Goodman filed the motion, Thomas filed a substantively identical motion without the assistance of counsel, declaring himself to be a pro se litigant. Less than one month later, in August 2013, Goodman filed a motion to withdraw as counsel.

In October 2013 the superior court held an evidentiary hearing regarding Thomas's motion for clarification of the visitation schedule and Goodman's motion to withdraw. Thomas received no advance notice of the hearing, but the superior court succeeded in contacting Thomas during the hearing and he participated telephonically. Thomas does not appeal the superior court's ruling on the motion for clarification of the visitation schedule or request relief from this court regarding enforcement of the visitation schedule. Because Thomas does not challenge these rulings, he has failed to point to any prejudice resulting from the superior court's order permitting Goodman to withdraw, and thus any error in granting Goodman's motion without providing more notice of the hearing was harmless.[27]

---

[27]    In his brief on appeal Thomas suggests that his first counsel, Brenckle, was ineffective and argues that the superior court abused its discretion by denying his motion for a continuance of the February interim custody hearing. But Thomas did not raise ineffective assistance of counsel in his points on appeal or brief the issue with a request

(continued...)

## V. CONCLUSION

We AFFIRM the superior court's order granting sole legal and primary physical custody to Sonya.

---

**27**(...continued)
for relief on this basis, and thus we consider any argument about the effectiveness of Brenckle's representation to be abandoned. *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598-99 (Alaska 2012) ("[A]n issue omitted from an appellant's points on appeal, even if that issue is cursorily presented in the opening brief, is deemed abandoned . . . ." (citing *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991))). Additionally, the superior court did not abuse its discretion by denying Thomas's motion for a continuance in the February interim custody proceeding because it did not deprive Thomas of a substantial right. It provided adequate accommodation to his counsel by delaying the second hearing date and allowing Thomas to call additional unannounced witnesses at the second hearing. Moreover, Thomas presents no evidence indicating that the denial of his motion for a continuance prejudiced him in any way. *See Wagner v. Wagner*, 299 P.3d 170, 175 (Alaska 2013) ("A refusal to grant a continuance constitutes an abuse of discretion 'when a party has been deprived of a substantial right or seriously prejudiced.' " (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 986-87 (Alaska 1982))).