NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JENNIFER TROUT, n/k/a JENNIFER DOWNS, | ) ) ) | |
| Appellant, | ) ) | Supreme Court No. S-16655 |
| | ) | Superior Court No. 3AN-14-08896 CI |
| v. | ) ) | |
| JOSIAH TROUT, | ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| Appellee. | ) ) ) | No. 1682 – June 27, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick McKay, Judge.

Appearances: G.R. Eschbacher, Anchorage, for Appellant. Colleen Baxter, Law Office of Colleen Baxter, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

Divorcing parents agreed that the father would have primary physical custody of their children and the mother would have visitation every other weekend and for several weeks during school vacations. A year later the mother moved to modify custody. The superior court denied her motion without a hearing. The following year the mother filed a second motion to modify custody, arguing that there had been a

---

\*        Entered under Alaska Appellate Rule 214.

substantial change in circumstances and that the custody schedule should be changed to alternating weeks with each parent. After a hearing the court found that there was no substantial change in circumstances and that it was not in the children's best interests to adjust the schedule to alternate weeks. Instead the court ordered that her weekend visits be lengthened. The mother appeals. We affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Josiah Trout and Jennifer Downs (formerly known as Trout) married in 2002. They had three daughters during their marriage. After their divorce Josiah bought a house where he lives with the three children, Josiah's sister and her son, and Jennifer's half-brother. Jennifer also purchased a house in the same area, where she lives with her current husband and his son. Jennifer and her husband both serve in the military.

### B.    Proceedings

#### 1.    The initial divorce proceeding and settlement

Josiah and Jennifer separated in early August 2014 and Josiah filed for divorce later that month. Josiah requested sole legal and primary physical custody of the three children. Josiah's attorney sent Jennifer a letter stating that Josiah had photographs and documents that he might use against Jennifer or her associates if she contested custody.[1] Jennifer, who was not represented by an attorney, filed an answer and counterclaim requesting joint legal and shared physical custody of their daughters.

Josiah and Jennifer reached an agreement in late September that they would have joint legal custody but that Josiah would have primary physical custody of the girls. The settlement agreement laid out two different visitation schedules because Josiah was

---

[1]    Josiah explained at the custody modification hearing that this letter referred to Jennifer's alleged affair with her now-husband. Josiah believed that Jennifer or her husband might face repercussions from the military for the alleged affair.

contemplating a move to Wisconsin. The visitation schedule which went into effect after both parents remained in Alaska gave Jennifer alternating weekends, one week during winter break, every other spring break, and three consecutive weeks in the summer with the children. Both parents signed the agreement. After questioning Jennifer, who was still unrepresented, to confirm that she understood the agreement, the superior court accepted it and issued an order putting it into effect in October 2014.

Jennifer was deployed overseas from January to May 2015. After she returned she and Josiah agreed on the division of marital property. In August the superior court adopted the property settlement, issued a decree of divorce, and ordered Jennifer to pay child support.

### 2. Jennifer's first motion to modify custody

In September 2015 Jennifer filed a motion to modify custody, asking the court to change Josiah's primary physical custody to shared custody. The parents had altered their visitation schedule so that Jennifer had visits with the children one evening each week in addition to the previously ordered weekend visitation. Jennifer argued that several changes had occurred that constituted a significant change in circumstances: she no longer had impending deployment orders, was no longer afraid of Josiah, and was no longer intimidated by the letter she had received from Josiah's attorney. Josiah filed an opposition disputing that there had been a change in circumstances and arguing that, even if there had been, it would be in the children's best interests for Josiah to retain primary physical custody.

The superior court found that Jennifer had not made a prima facie showing of a substantial change in circumstances and denied her motion without a hearing. But it ordered that Jennifer continue to have evening visits one night per week.

### 3. Jennifer's second motion to modify custody

In April 2016 Jennifer hired counsel and filed a new motion to modify child custody. She again alleged that she had been intimidated into signing the custody settlement by Josiah, and also that she had not understood the consequences of signing the settlement. Jennifer alleged that Josiah had committed domestic violence[2] and had a substance abuse problem as demonstrated by a February 2016 arrest for driving under the influence. She argued that an equal split of physical custody and a week on/week off schedule would be in the children's best interests. In his opposition Josiah largely reiterated the same arguments he had made in response to her earlier motion.

Jennifer hired a new attorney between filing the motion and the hearing. Her new attorney filed a prehearing memorandum alleging a different set of changed circumstances: both parties had purchased homes close to each other; Jennifer was no longer subject to deployment; Jennifer had a flexible work schedule; and Josiah was no longer considering a move to a different state.

### 4. The custody modification hearing

A custody modification hearing took place on two days in February and March 2017. The court stated that it could only consider whether a change in circumstances had occurred since Jennifer's previous motion to modify. It found that Josiah's arrest for driving under the influence was the only significant change since that time and that it was an aberration for Josiah, noting that Jennifer had not alleged an ongoing alcohol problem. The court found no substantial change in circumstances, but did increase the length of Jennifer's weekend visits so that they would begin Thursday evening and end Monday morning. The court authorized the parties to call the

---

[2] While this motion is the first time that Jennifer explicitly identified Josiah's actions (yelling, punching objects, slamming doors) as domestic violence, she made allegations about Josiah's conduct in her first motion to modify custody.

arrangement 50/50 custody over the summer to allow Jennifer to qualify for military child care.

Jennifer filed a motion for reconsideration. She argued that the court had not recognized that the schedule adjustment gave the parties shared physical custody as defined in Civil Rule 90.3(f)(1). She also argued that the court should have changed the summer custody schedule to an alternating week schedule because her child care can only be purchased by the week.

The superior court issued a written order on reconsideration. The court reiterated its finding that there was no substantial change in circumstances and held that it was in the children's best interests to have longer weekend visits with Jennifer, but not in their best interests to alter the schedule to a week on/week off.

Jennifer appeals.

## III. STANDARD OF REVIEW

"We review a trial court's child custody modification decision deferentially, reversing the decision only when the lower court abused its discretion or when its controlling findings of fact were clearly erroneous."[3] "Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[4] "Abuse of discretion is established if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[5]

---

[3] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[4] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[5] *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

"Factual findings are clearly erroneous if a review of the record leaves us 'with the definite and firm conviction that the superior court has made a mistake.' "[6]

## IV. DISCUSSION

### A. It Was Not An Abuse Of Discretion To Find That An Alternating Week Custody Schedule Was Not In The Best Interests Of The Children.

It was error for the superior court to consider whether there was a change in circumstances since Jennifer's September 2015 motion to modify custody instead of since the October 2014 custody order.[7] But that error was harmless. The court found that increased weekend visitation with Jennifer, but not a week on/week off schedule, would be in the children's best interests. The court did not abuse its discretion in its determination of the children's best interests. Because modification of custody was not in the children's best interests, "it is unnecessary for us to determine whether there was a substantial change in circumstances."[8]

---

[6]     *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207-08 (Alaska 2000)).

[7]     *See Collier v. Harris*, 261 P.3d 397, 408 (Alaska 2011) ("To determine whether [a parent] was entitled to a hearing on modification of shared physical custody, we compare the circumstances as they existed at the time of the last *order* on physical custody to the circumstances [the parent] alleged" in the current motion to modify custody. (emphasis added) (citing *Peterson v. Swarthout*, 214 P.3d 332, 340-41 (Alaska 2009))); *see also Nichols v. Mandelin*, 790 P.2d 1367, 1372 (Alaska 1990) (determining changed circumstances "requires the non-custodial parent to show that circumstances have changed significantly since the prior custody order was entered before a court will consider modifying the existing custodial arrangement.").

[8]     *Matthew P. v. Gail S.*, 354 P.3d 1044, 1047 (Alaska 2015) (affirming the denial of a custody modification based on the court's finding that the change would not be in the children's best interests without deciding whether the court had abused its discretion in finding no change in circumstances).

The superior court must determine custody based on the best interests of the children[9] and consider the factors listed in AS 25.24.150(c).[10] Jennifer argues that the court failed to make an adequate best interests finding before it adjusted the custody schedule because it failed to discuss the statutory factors. But the superior court does not need to expressly refer to AS 25.24.150(c) as long as its reasoning demonstrates that it considered the appropriate statutory criteria.[11] In *Borchgrevnik v. Borchgrevnik* we found that the superior court made sufficient findings, even without explicitly citing AS 25.24.150(c), when "some of the statutory factors were expressly addressed by the trial court and others were not in genuine dispute and did not favor" the parent not awarded primary custody.[12] "When we review a child custody modification order, we must determine whether the superior court gave due consideration to each of the pertinent statutory factors."[13]

---

[9]     *Platz v. Aramburo*, 17 P.3d 65, 71 (Alaska 2001) (citing *Hakas v. Bergenthal*, 843 P.2d 642, 645 (Alaska 1992)) (emphasizing that the best interests of the child is "central to change of custody cases").

[10]     *Matthew P.*, 354 P.3d at 1047.

[11]     *Siekawitch v. Siekawitch*, 956 P.2d 447, 451 (Alaska 1998); *Borchgrevink v. Borchgrevnik*, 941 P.2d 132, 137-38 (Alaska 1997) ("Although the court did not expressly cite AS 25.24.150(c), it addressed the statutory factors that were, in the context of the record in this case, pertinent and potentially determinative.").

[12]     941 P.2d at 138. We have stated that we "prefer that superior courts specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit 'ultimate' findings," but have not vacated judgments unless the findings are inadequate. *Id.* at 139-40.

[13]     *Nelson v. Nelson*, 263 P.3d 49, 53 (Alaska 2011). "The superior court has some leeway in determining what factors it 'considers pertinent.' " *Id.* (quoting AS 25.24.150(c)(9)).

Even though the superior court did not cite AS 25.24.150(c), its oral findings demonstrate that it considered several of the statutory best interest factors: the needs of the children, the ability of the parents to meet their children's needs, the ability of each parent to foster a relationship between the other parent and children, evidence of substance abuse, and the importance of maintaining continuity for the children. The court found that the children were currently doing well, and that both parents were "decent" and "involved parents" who lived in the same community. The court stated its concerns about Josiah's belief that he was the only parent who knew what was best for his daughters, but it noted that the parents were able to cooperate as demonstrated by Jennifer's weeknight visits with the children and her assistance with getting the children to and from school. The court also found that driving under the influence was "aberrant behavior" for Josiah. While the court did not explicitly state that it considered "the desirability of maintaining continuity,"[14] its statements make clear that it considered how well the children were doing in the current custody arrangement when deciding to adjust rather than radically change the schedule. These factual findings are supported by the record and are not clearly erroneous. It is clear from these findings that the superior court considered the pertinent factors listed in AS 25.24.150(c).

Jennifer also argues that the superior court erred in rejecting her proposed week on/week off schedule. The superior court heard testimony from both parents, several witnesses who supported Josiah, three of the children's teachers, Jennifer's therapist who had also previously worked with Josiah and two of the children, and a private custody investigator; and reviewed the custody investigator's report of an interview with the eldest child. The teachers all testified that the children were doing well and that both parents seemed to be involved and have good relationships with the

---

[14]    AS 25.24.150(c)(5).

children. Josiah testified that the children had a difficult adjustment after the divorce but that they were now doing well. Jennifer's mother also testified that the divorce had initially been difficult for the children and that she thought the children should remain primarily with Josiah. In light of the evidence that the children were doing well after a difficult adjustment to the divorce, it was not an abuse of discretion for the court to find that a week on/week off schedule would not be in the children's best interests.

**B.     It Was Not Error To Decline To Accommodate Jennifer's Summer Day Care Schedule.**

Jennifer argues that the superior court should have considered that she could only purchase child care at her work on a weekly basis before setting the summer custody schedule. But Jennifer provides no legal citations to support this argument nor does she provide evidence of her need for child care to accommodate her weekend visits with the children. The new custody schedule extended Jennifer's weekend visits from Thursday afternoon until Monday morning and provided that these visits should occur on weeks during which she has Fridays off, suggesting that Jennifer would not need to purchase child care for these weekend visits. The superior court "may consider only those facts that directly affect the well-being of the child."[15] The court found that it would not be in the best interests of the children to move to a week on/week off schedule and it was not an abuse of discretion to prioritize that finding over accommodating the cost structure of military child care.

**V.     CONCLUSION**

The superior court's decision is AFFIRMED.

---

[15]     AS 25.24.150(d).